## Case No. 2,136.

### In re BUNSTER.

[5 Ben. 242;[1] 5 N. B. R. 82; 41 How. Pr. 406.]

District Court, S. D. New York. June Term, 1871.

BANKRUPTCY—DISCHARGE OF INVOLUNTARY BANK-RUPT—CERTIFICATE OF CONFORMITY.

An involuntary bankrupt may receive a discharge as well as a voluntary bankrupt, but is not entitled to it, or to a certificate of conformity, unless his assets equal fifty per cent. of the debts proved, or he files the assent, in writing, of a majority of his creditors in number and value.

[In bankruptcy. In the matter of Henry B. Bunster, a bankrupt.

[By John Fitch, Register:]

[2] [This is a proceeding in involuntary bankruptcy. The proceedings in the cause are regular and according to law, up to and including the return of the order to show cause why the above named bankrupt should not be discharged according to law. Several creditors, who have duly proved their respective claims, have filed notice of their appearance by their respective attorneys, and have a right to file specifications of their grounds of opposition to the discharge of said bankrupt within the time prescribed by the act. By the schedule, it appears that the debts from which the bankrupt seeks to be discharged, were contracted since January first, eighteen hundred and sixty-nine, which brings this case within the provisions of the amendment to section thirty-three of the bankrupt act, approved July twenty-seventh, eighteen hundred and sixty-eight, which reads as follows: "That the provisions of second clause of the thirty-third section of said act, shall not apply to the cases of proceedings in bankruptcy, commenced prior to the first day of January, eighteen hundred and sixty-nine, and the time during which the operation of the provisions of said clause is postponed, shall be extended until said first day of January, eighteen hundred and sixty-nine." And said clause as amended July fourteen, eighteen hundred and seventy, reads as follows: "In all proceedings in bankruptcy, commenced after the first day of January, eighteen hundred and sixty-nine, no discharge shall be granted to a debtor whose assets shall not be equal to fifty per centum of the claims proved against his estate upon which he shall be liable as the principal debtor, unless the assent in writing of a majority in number and value of his creditors to whom he shall have become liable as principal debtor, and who shall have proved their claims, be filed in the case at or before the time of the hearing of the application for discharge." Several creditors have duly proved their

claims, amounting in the aggregate to the sum of thirty-two thousand and sixty-three dollars and eight cents, and the assets to ten thousand dollars, as appears by the certificate of the assignee. The bankrupt has not shown that his assets equal in value, since the adjudication of bankruptcy, fifty per cent. of the debts proved against his estate as required by law, or that they will do so.

[Counsel for the bankrupt, upon all the proceedings in the case, applies for the usual certificate of conformity. He does not offer or tender the assent in writing of a majority of his creditors who have proved their claims, nor any of them, as is required by said section thirty-three, neither does he ask for an adjournment of the order to show cause, but applies for a discharge and the usual certificate of conformity, and claims as a matter of law that said section thirty-three is not applicable to an involuntary case, and only applies to voluntary bankruptcy, and that he is entitled to the certificate of conformity without filing proof that his assets equal fifty per cent. or filing the assent of a majority of his creditors, both in number and value as required by law. That the bankrupt, being an involuntary bankrupt, has the same right to apply, under section thirty-three as amended in eighteen hundred and sixty-eight, for a discharge as if he was a voluntary bankrupt. That he having been declared a bankrupt by this court, and having delivered up all his property and effects, both real and personal, to the assignee, he is entitled (the assignee not opposing) to his discharge. That any other construction of section thirty-three might be the means of transforming the statute from a liberal one to a very harsh one, inasmuch as it might put it into the power of a few of the principal creditors to utterly preclude the bankrupt from obtaining a discharge, although he had in good faith surrendered all his effects to the assignee, and that in this case the bankrupt is entitled to his discharge without the consent of a majority of his creditors, or the payment of fifty per cent. in value as required by section thirty-three. The bankrupt, by his counsel, not only declined to ask for, but positively refused an adjournment of the order to show cause to some future day, which I was willing to grant in order that if the district court decides that said assent was necessary, the same, if possible, might be obtained. The bankrupt claims that he can apply at any future time for permission to file the assent of his creditors to his discharge, and that his failure to do so on the return day of the order to show cause, does not prejudice any of the proceedings already had, and may show assets equal to fifty per cent.

[I certify that in the course of the proceedings in this cause now pending before me, the following questions arose pertinent to said proceedings, and were stated and agreed to by counsel for the bankrupt, and also by

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

[2] [From 5 N. B. R. 82. 5 Ben. 242, gives only a synopsis of the register's opinion.]

counsel for creditors, and requested the usual certificate to the district court: I. Can an involuntary bankrupt apply for a discharge under any of the provisions of the bankrupt law? II. Is the thirty-third section of the bankrupt act as amended July twenty-seventh, eighteen hundred and sixty-eight, and July fourteenth, eighteen hundred and seventy, applicable to proceedings in involuntary bankruptcy? III. Can an involuntary bankrupt whose assets have been surrendered to the assignee, but without proof that the assets equal or amount to fifty per cent. of the amount proved against his estate, be discharged without the assent of a majority in number and value of his creditors who have proved their debts, &c., as required by said section thirty-three of the bankrupt act as amended, having been filed in the case at or before the time of the hearing of the application for discharge? IV. Can the certificate of conformity be granted in an involuntary case, when the assets do not equal fifty per cent. of the claims proved, which accrued subsequent to January first, eighteen hundred and sixty-nine, and the bankrupt does not file an assent of the majority of his creditors who have proved their claims, &c., as required by the aforesaid section of the bankrupt act as amended? V. Can a bankrupt who neither pays the fifty per cent., and who does not prove that his assets equal or amount to that sum, and who does not tender or file the required assent, apply again for a discharge under and by virtue of the order to show cause, unless the return day of the order to show cause has been adjourned?

[The bankrupt act prescribes a particular and specific code of procedure or practice which the bankrupt must comply with before the question as to whether he is entitled to a discharge can be entertained by the court. In this case the bankrupt has complied with all the requirements of the bankrupt act, with the exception of paying fifty per cent. of the amount of debts proved against his estate, or showing that they equal or amount to fifty per cent., or filing an assent in writing of a majority in number and value of his creditors who have proved their debts to his discharge, without regard to the percentage which may be realized from his estate. That section thirty-three of the bankrupt act expressly provides that a bankrupt may be discharged if he files such an assent on or before the return day of the order to show cause why he should not be discharged; consequently, if he fails so to do, and his estate does not equal or amount to fifty per cent. of the debts proved, the court cannot entertain his motion or application for a discharge. From the scope and tenor of the bankrupt act, it appears to have been founded upon the idea and principle, that unfortunate debtors should be released from their pecuniary contracts (except those fraudulently contracted) by a general law, in conformity to article one, section eight, of the constitution of the United States. Such a general law is the bankrupt act of congress, approved March second, eighteen hundred and sixty-seven. Involuntary bankruptcy did not originate with the act of congress, approved March second, eighteen hundred and sixty-seven, as the state of New York has for years her statute enactments, whereby imprisoned and insolvent debtors were discharged both from imprisonment and from their debts; the act entitled "an act to abolish imprisonment for debt, and to punish fraudulent debtors," passed April twenty-sixth, eighteen hundred and thirty-one, and the several acts amending the same; the Massachusetts insolvent laws, the English bankrupt act, together with section one of the bankrupt law of eighteen hundred and forty-one, which act of eighteen hundred and forty-one took effect February first, eighteen hundred and forty-two, resembled, in this particular, the English bankrupt act. 6 Geo. IV. c. 16. By the act of eighteen hundred and forty-one, it was provided that any person so declared a bankrupt at the instance of any creditor, may petition the court, &c., and upon complying with the provisions of the act of eighteen hundred and forty-one, was discharged in the same manner as the insolvent who applied by petition, from all debts which "shall not have been created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any fiduciary capacity." The practice as to the commencement of proceedings under the act of eighteen hundred and forty-one, and also under the act of eighteen hundred and sixty-seven were different, in voluntary and involuntary cases up to the adjudication; then they were united in both manner and form of procedure, and to the manner of application for discharge. In this district, under the act of eighteen hundred and sixty-seven, both classes of cases have uniformly been granted the same relief, no distinction having been made. The inference is fair, that had congress intended to take, by virtue of section thirty-nine of the bankrupt act, the property of an insolvent, dividing it among his creditors and not have afforded him any relief and denying him a discharge, similar to the one given to a voluntary bankrupt from his debts, that an express provision refusing such a discharge would have been contained in the act. But we are not left to doubt or conjecture on that point, neither must we decide the question by implication, as section thirty-two of the act of eighteen hundred and sixty-seven, in providing for a discharge under and by virtue of the act, uses the words, "the bankrupt," thus, by the ordinary acceptation of the words, includes both a voluntary and involuntary bankrupt. The discharge in form, as set forth in section thirty-two of the act of eighteen hundred and sixty-seven, in describing the bankrupt, also in reciting the proceedings had, uses the

words, "on which day the petition for adjudication was filed by or against him;" the words "or against" are in parenthesis, thereby clearly indicating that the words "or against" were put in the act for the express purpose of showing that a person against whom a petition in bankruptcy had been filed was entitled to a discharge, the same as one by whom a petition had been filed by himself. The words "on his own application," when taken in connection with sections thirty-six and thirty-seven, all seem to tend to the conclusion, that after the adjudication, the practice and relief, as to both voluntary and involuntary proceedings, should be the same, subject, however, to the provisions of section thirty-nine of the act. In re Clark [Case No. 2,800], and In re Dibblee [Id. 2,884], seem to be decisive on this point and are in accordance with the uniform practice of the United States district courts throughout the United States, an involuntary as well as a voluntary bankrupt may apply for a discharge. Gazz. Bankr. (2d Ed.) 134; [Bump, Bankr. (3d Ed.) 214.] [3] It was the avowed determination of congress, in passing the bankrupt act, to destroy and eradicate the unjust, oppressive and improper system which had become so prevalent, and an evil too grievous for honest men to bear, by which insolvent debtors could, under state laws, pay whom they choose, and cheat and defraud all others. By means of confessions of judgment, conveying, transferring real estate or assignments, mortgages on real and personal property, and other means, prefer their friends, and render the administration of the laws for the collection of debts, a mere farce. But now all is changed since the passage of the bankrupt act, which has suspended the state insolvent laws, ipso facto, as soon as it took effect. Com. v. O'Hara, Bankr. Reg. Supp. xix.; Van Nostrand v. Barr, 2 N. B. R. 154; Perry v. Langley [Case No. 11,006]; Martin v. Berry, 37 Cal. 208; Corner v. Miller, 1 N. B. R. 98. No preference can be given to relatives or friends; each creditor who proves a claim shares with the other creditors, all receiving their pro rata share alike. This is just and equitable, and in accordance with the true principles of justice and equity, of which all honest men approve.

[The views of the bankrupt's counsel in this case are not sound. Bankrupts are no worse off if their property is equally divided, than they would be if (as in this case) it had been taken on execution by a creditor, upon a judgment in a state court. It is better for the bankrupt that his property be equally distributed, and he be discharged by assent of his creditors, (as he probably would be) for creditors are usually lenient when an insolvent is honest, (and usually sign the assent to his discharge when requested to do

so), than to be left hopelessly insolvent, and not relieved by the decree of this court. I fail to see any just or valid ground upon which a bankrupt can be discharged without complying with the requirements of section thirty-three as amended; and I also fail to see any legal grounds upon which the case, Repplier v. Bloodgood, 1 Sweeney, 34, was decided. The court in that case held, that an involuntary bankrupt could not apply for a discharge, and says "section thirty-five of the act declares void all securities or contracts made or given in order to induce any creditor to forbear opposing the application for discharge of the bankrupt. But in this involuntary proceeding, taken by a creditor against the bankrupt, there is not, nor can there be any application for discharge of the bankrupt. The statute provides no method or means whereby a bankrupt can apply for a discharge in a proceeding hostile to him, instituted by a creditor. In this respect, as well as others, the United States law differs from the English bankrupt statutes." In this respect Judge Fithian, who delivered the opinion of the court, mistook the tenor and effect of the English bankrupt law in proceedings to be taken for the discharge of the bankrupt, and in any proceedings which may be instituted against a bankrupt under the English bankruptcy act of eighteen hundred and sixty-nine, must be had under section forty-eight and forty-nine of the act, whether the proceedings have been instituted by or against a bankrupt, and are similar to the proceeding under section thirty-three of the bankrupt act, part one, adjudication in bankruptcy, of the English bankrupt act of eighteen hundred and sixty-nine. 32 and 33 Vict. c. 71. "An act to consolidate and amend the law of bankruptcy" contains similar provisions in regard to proceedings in cases of involuntary bankruptcy, &c., to section thirty-nine and forty of our bankrupt act. The English bankrupt act applies for the most part to cases of involuntary bankruptcy. In section thirty-three of the bankrupt act as amended, the following words occur, to wit: "In all proceedings in bankruptcy." It is difficult to perceive how a court can construe that sentence so as to annul and ignore the word "all," and confine the privilege of a discharge to voluntary bankrupts alone. The section, as a whole, and the sentence aforesaid, is unmistakable and precludes the idea of any distinction between voluntary and involuntary proceedings, or that it denies to the involuntary bankrupt the relief afforded to the voluntary bankrupt. That would be a hardship, and leave the bankrupt, where the state laws do, an insolvent, after the taking of his property by execution, and deny him the relief afforded by the bankrupt act, which was intended as a palliation for the harsh remedy of involuntary bankruptcy. The bankrupt act is two fold in its operations, it being an insolvent as well as a bankrupt

---

[3] [This citation is from the case as reported in 41 How. Pr. 406.]

act. It has the same scope and effect as an insolvent law as the state acts had, and acts upon the same cases and persons, suspending the state insolvent laws as per article six, section two of the constitution of the United States.

[An involuntary bankrupt has few, if any, of the equities in his favor which can be claimed by a voluntary bankrupt. One of the elements of fraud in bankrupt proceedings, as set forth by Judge Blatchford, in Re Lowenstein [Case No. 8,574], is, that the involuntary bankrupt has not done what he should have done, i. e., filed his petition in bankruptcy. The law, by adjudicating him bankrupt, has determined his status, and by virtue of such adjudication he has been forced to do what he should have done of his own free will. That his property has been taken forcibly only shows that the law has been compelled to use force to compel him to do his duty. The bankrupt cannot question the propriety or justice of the law in having compelled him to do his duty. Instead of its being a reason in favor of, it is rather a reason against his discharge. As the law magnanimously overlooks his delinquency in not filing his petition—as the law requires—and provides that he may nevertheless receive a discharge, if he will only comply with the same terms that are required of a voluntary bankrupt, he should gladly comply with and accept the same, not as a right, but as a favor granted him, thus giving him a legal, but not a moral release from his pecuniary obligations. It has ever been a cardinal rule of moral honesty, that a debtor cannot be released from a moral obligation to pay a debt, except upon the payment of the same, or in some way or manner satisfying the creditor; nothing else can exonerate the conscience of the debtor, or discharge the moral obligation created by contracts between man and his fellow-man.

[I am clearly of the opinion that if an adjournment is not had upon the return day of the order to show cause, &c., no further proceedings can be had under or by virtue of that order; and if, upon that day, the bankrupt fails to show the payment of the fifty per cent., or that his property and effects were equal to fifty per cent. of the claims proved against his estate, upon which he shall have become liable as principal debtor upon the debts created since January first, eighteen hundred and sixty-nine, or unless the assent in writing of a majority in number and value of his creditors to whom he shall have become liable as principal debtor, and who shall have proved their claims, be filed in the case at or before the time of the hearing of the application for discharge. In construing and administering the act, courts should be guided by the judicial decisions and precedents founded upon the enactments of a similar nature, by the courts of England and of the various states of the United States; also follow the rules as laid down in the elementary works upon the construction of statutes. In doing so they give form, force and solidity to judicial proceedings, as well as carry out the evident intention of the law makers. Any other rule would create the most interminable confusion, conflict of authority and of decisions, —the same as have arisen under the ill-digested and unintelligible code of procedure of this state—and entail upon the whole country the curses inflicted by the code of procedure, and the conflicting decisions thereon by the courts of this state, a calamity which all who are required to construe and administer the bankrupt act should endeavor to avoid. I. I decide that an involuntary bankrupt who has complied with all the provisions of the bankrupt act, can apply for and receive a discharge the same as a voluntary bankrupt. II. That section thirty-three of the bankrupt act, as amended July twenty-seventh, eighteen hundred and sixty-eight, and July fourteenth, eighteen hundred and seventy, is applicable to proceedings in involuntary bankruptcy. III. That an involuntary bankrupt, although having assets, and those assets having been duly surrendered to the assignee, but not amounting to or being equal to the required fifty per cent. of the claims proven against his estate, is not entitled to a certificate of conformity, unless the bankrupt before, on, or at the time of hearing of the application for discharge, tender or file the assent in writing of a majority in number and value of his creditors to whom he shall have become liable as principal debtor, and who shall have proved their claims, as required by section thirty-three of the bankrupt act, as amended. IV. That a certificate of conformity cannot be granted in an involuntary case where the debts accrued subsequent to January first, eighteen hundred and sixty-nine, and when the assets do not amount to fifty per cent. of the claims proved, and also the bankrupt does not, upon the hearing of the application for discharge, tender or file an assent in writing of the majority of his creditors, in numbers and value, to whom he shall have become liable as principal debtor, and who have proved their claims in accordance with section thirty-three, as amended. V. That in case an involuntary bankrupt does not tender or file the assent, or show by the return of the assignee, the payment of, or that his property and effects amount to, equal, or will pay fifty per cent. so as to comply with section thirty-three of the act as amended, the certificate of conformity cannot be granted, and that unless an adjournment is had, all the proceedings under the order to show cause falls, and the bankrupt is virtually out of court, and can only be reinstated or relieved by the court in its exercise of its general common law and equity jurisdiction conferred upon it by article three, section two, of the constitution of the United States.

[This case brings up the question as to the discharge of an involuntary bankrupt under

the provisions of the bankrupt act. As yet there has not been any express adjudication by any of the United States courts as to the true meaning and intent of section thirty-three of the act, as amended; and as the superior court of this city, at general term, has decided that an involuntary bankrupt cannot be discharged at all, and that inasmuch as the counsel for the bankrupt is so decidedly of the opinion that an involuntary bankrupt is entitled to a certificate of conformity and a discharge, upon the production of the certificate of the assignee that the bankrupt has surrendered to the assignee all his property as required by the bankrupt act, and without the payment of fifty per cent. or assets equaling fifty per cent., &c., and although his assets do not amount to or equal fifty per cent., &c., &c., the counsel for the bankrupt makes this application in good faith, firmly believing that his views are correct. The several counsel for the opposing creditors also claim that they are correct in entertaining the opposite view of the act. All desire that the district court should pass upon the question.] [4]

BLATCHFORD, District Judge. I concur fully in the five conclusions of the register, except that I do not decide that the bankrupt, when out of court, in the case put in the fifth conclusion, can be reinstated or relieved by the court.